COLUMBIA GAS TRANSMISSION
CORPORATION, Plaintiff,

v.

MANGIONE ENTERPRISES OF TURF
VALLEY, L.P., Defendant.

No. CIV. AMD–94–2955.

United States District Court,
D. Maryland.

May 2, 1996.

Roger D. Redden, Kurt J. Fischer, Piper & Marbury, Baltimore, MD, for plaintiff.

Joseph C. LaVerghettaa, Lutherville, MD, for defendant.

## ORDER

DAVIS, District Judge.

On October 31, 1995, I issued an Order in this case granting the plaintiff's, Columbia Gas Transmission Corporation ("Columbia"), motion for summary judgment. I also issued a declaratory judgment to the effect that Columbia had certain rights-of-way adjacent to their natural gas pipelines and that defendant, Mangione Enterprises of Turf Valley, L.P. ("Turf Valley"), had located certain permanent structures in those rights-of-way. Accordingly, I issued an injunction ordering Turf Valley to remove all structures encroaching on Columbia's rights-of-way within thirty days from October 31, 1995.

On January 16, 1996, Columbia filed a motion for contempt of this Court's October

31, 1995, Order, alleging that Turf Valley had failed to remove the encroachments specified in the Order. By March 8, 1996, counsel for Turf Valley had failed to file any response to Columbia's motion, and I issued an Order directing him to do so. Upon receiving Turf Valley's response, I referred this matter to Magistrate Judge Gauvey to conduct a hearing and to make proposed findings of facts and recommendations as to the disposition of the plaintiff's motion for contempt. Judge Gauvey held a hearing on April 26, 1996. I am in receipt of her Report and Recommendation and the time for filing objections has now passed. Fed.R.Civ.P. 72.

I have reviewed Judge Gauvey's Report and Recommendation; and I hereby adopt and confirm her findings and conclusions. I find, therefore, that Turf Valley is in contempt of this Court's October 31, 1995, Order. Accordingly, it is this 31st day of May 1996, by the United States District Court for the District of Maryland,

(1) ORDERED that Columbia Gas Transmission Corporation's Motion for Contempt BE, and hereby IS, GRANTED in accordance with the attached Order submitted by the plaintiff; and it is further

(2) ORDERED that Karen A. Amos, Esq., 8355 Court Avenue, Ellicott City, Maryland 21043, be appointed as Trustee to realize removal of the structures encroaching on Columbia's natural gas pipelines' rights-of-ways as specified in this Court's October, 31, 1995, Order; and it is further

(3) ORDERED that defendant, Mangione Enterprises of Turf Valley, L.P., bear the costs of the Trustee and the costs of removal; and it is further

(4) ORDERED that defendant, Mangione Enterprises of Turf Valley, L.P., pay Columbia Gas Transmission Corporation's reasonable attorney's fees in the amount of $5135.00 and costs in the amount of $236.84.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the attached Order, by United States mail, upon the attorneys of record for the parties appearing in this case.

## ORDER

Upon consideration of the Motion for Contempt and Other Relief filed by Plaintiff, it is this 31st day of May, 1996.

ORDERED that:

1. The Motion is hereby GRANTED;

2. Turf Valley is adjudged in contempt of this Court's Order dated October 31, 1995;

3. A Trustee,, shall be appointed for the sole purpose of taking the actions necessary on behalf of Turf Valley to comply with the Order of this Court dated October 31, 1995 that have been filed in this case;

4. On further application by the Trustee and Order of this Court, Turf Valley shall pay the reasonable costs incurred by the Trustee for performing the duties pursuant to this Order, including the cost of a bond and a reasonable fee for the Trustee; and

5. The Clerk of Court shall mail a copy of this Order to all attorneys of record.

## REPORT AND RECOMMENDATION

By Order dated March 19, 1996, the Honorable Andre M. Davis referred to the undersigned Magistrate Judge Plaintiff's Motion for Contempt, for hearing, proposed findings of fact and recommendations as to disposition. (Paper No. 20). By letter dated April 5, 1996 addressed to counsel for Plaintiff and Defendant, the Court gave notice to the parties of the time and place of the hearing and the essential facts constituting the alleged contempt, and advised the parties that proof of the contempt and any defense thereto must be presented through live testimony, not by way of affidavit. (Paper No. 21).

The hearing was held on April 26, 1996. At the hearing, Columbia offered eight exhibits into evidence as well as the testimony of Mr. Roger Redden as an expert on the attorney's fees requested and Mr. Donald Blizzard, Operations Supervisor for Columbia, on the continued presence of permanent structures on Columbia's rights of way in violation of the October 31, 1995 Order of this Court. After advising defense counsel, Mr. LaVerghetta, of Rule 3.7 of the Maryland Code of Professional Conduct, and after Plaintiff's counsel expressed no objection under that

Rule to Mr. LaVerghetta testifying as a witness while remaining as counsel to the defendant, Mr. LaVerghetta testified under oath and responded to questions from counsel and the Court on Turf Valley's efforts to comply with this Court's Order of October 31, 1995. Although Mr. LaVerghetta questioned the "permanent" nature of the structures, he did not contest the continued presence of the structures within Columbia's rights of way. Mr. LaVerghetta offered no documentary evidence. Based on the evidence presented at the hearing and arguments of counsel, the undersigned makes the following findings of fact and recommendations.

### FINDINGS OF FACT

1. On October 26, 1994, the Plaintiff, Columbia Gas Transmission Corporation ("Columbia"), filed a complaint for declaratory judgment and injunctive relief against the Defendant, Mangione Enterprises of Turf Valley, L.P. ("Turf Valley"). (Paper No. 1). On February 23, 1995, Columbia filed a Second Amended Complaint, seeking a declaration that Turf Valley, in violation of federal law, had located certain permanent structures within the rights of way of two gas pipelines of Columbia, specifically, a wooden deck, a ground level and an elevated driving range deck, a module office and two trees. (Paper No. 9).

2. On October 4, 1995, the Plaintiff filed a Motion for Summary Judgment. (Paper No. 13). The Defendant filed no response.

3. On October 31, 1995, the District Court granted Plaintiff's Motion for Summary Judgment, finding that federal safety requirements necessitate that Columbia maintain rights of way adjacent to their pipelines and that Turf Valley had located permanent structures in the rights of way of these pipelines, specifically, two trees, a module office, a ground level and elevated driving range deck. (Paper No. 14, ¶¶ 8 and 9.) Having so found, the District Court ordered Turf Valley to "within thirty days of the day of this Order, remove all structures that are (a)

within thirty feet of Columbia's pipeline designated line MA, and (b) within twenty-five feet of Columbia's pipeline designated line MB, including the structures specifically described in paragraph 9 above," and further directed the Clerk of the Court to mail a copy of this Declaratory Judgment and Order to counsel of record.

4. Counsel for Defendant has stated that he did not receive a copy of the Declaratory Judgment and Order from the Court.[1]

5. By facsimile dated December 13, 1995, Plaintiff's counsel transmitted to Defendant's counsel the October 31, 1995 Order of the District Court. (Plaintiff's Exhibit No. 1).

6. By letter dated December 28, 1995, Plaintiff's counsel contacted Defendant's counsel, stating his client's desire to have the encroachments removed from the right of way, pursuant to Judge Davis' Order "immediately" and warning him that unless he heard from him before the close of business on January 2, 1996, he would file a motion for contempt to enforce the Order. (Plaintiff's Exhibit No. 6). That letter also stated that Plaintiff's counsel had attempted three times prior to the December 28, 1995 letter to speak directly with Defendant's counsel, but had been unsuccessful and that Defendant's counsel had not returned his telephone calls. *Id.*

7. On January 16, 1996, Plaintiff filed a Motion for Contempt, seeking to enforce the October 31, 1995 Order of the Court and asking that the Court hold Turf Valley in contempt, appoint a trustee for Turf Valley at Turf Valley's expense to take all actions on behalf of Turf Valley necessary to comply with the Court's Order and order Turf Valley to pay Columbia's reasonable attorney's fees and costs incurred in its enforcement of the Order. (Paper No. 16).

8. Turf Valley did not file any response to this Motion in the time allowed by the Rules.

9. On March 8, 1996, the Court (The Honorable Andre M. Davis) issued an Order directing Turf Valley to file a response to the

---

1. The Court will take judicial notice that it is the custom and practice of the Clerk of this Court to initialize and date the lower right corner of an Order to evidence that the order has been sent to the parties of record. Judge Davis' October 31, 1995 Order has not been dated and initialized, suggesting that indeed the Order may not have been sent to counsel for Turf Valley.

pending Motion for Contempt and other relief or an explanation as to why a response cannot be filed, on or before March 16, 1996. (Paper No. 17).

10. On March 18, 1996, in its response, Turf Valley stated, *inter alia,* that it anticipated that the principals of the parties would be meeting shortly to discuss the subject litigation as well as other matters. (Paper No. 18).

11. On March 21, 1996, Columbia filed its Reply to Answer to Motion for Contempt and Other Relief in which it was stated:

Turf Valley requested the meeting with Columbia officials to discuss Turf Valley's planned development in areas adjacent to Columbia's natural gas pipeline and to discuss the removal of the encroaching structures, pursuant to this Court's October 31, 1995 Order. Columbia agreed to this meeting with the clear understanding that it was not willing to stay or postpone the Motion for Contempt or Other Relief before this Court. Turf Valley was explicitly told that the removal of the structures was in no way contingent on the results of any meeting that might be held between the parties.

(Paper No. 19).

12. As of April 26, 1996, none of structures identified in the Court's Order of October 31, 1995 had been removed pursuant to the Court's Order.

13. Turf Valley did not appeal the Order of October 31, 1995, seek reconsideration of the Order or seek a stay.

14. Turf Valley has made no written request of Columbia to modify the Order, obtain a postponement of the deadline for the removal of the structures, or to clarify the meaning of the Order.

15. No meeting has taken place between the principals of Columbia and Turf Valley to date regarding compliance with the October 31, 1995 Order of the Court.

16. Turf Valley's only communication with Columbia regarding the Order appears to have been several telephone calls, most all of which appear to have been initiated by Columbia.

17. Columbia has never excused Turf Valley from strict compliance with the Order.

18. Turf Valley's explanation for its failure to comply with the October 31, 1995 Order of the Court was delay in receiving the Order and its belief that it might be able to reach some accommodation with Columbia concerning the extent and nature of the removal of the structures as ordered by the Court.[2]

18. Plaintiff, Columbia, has submitted a bill for attorney's fees in the amount of Five Thousand, Three Hundred and Forty–Two Dollars ($5,342.00) and costs in the amount of Two Hundred and Thirty–Six Dollars and Eighty–Four Cents ($236.84) in its efforts to enforce the October 31, 1995 Order of this Court. (Plaintiff's Exhibit No. 5).

## CONCLUSIONS OF LAW

1. Civil Contempt

In order to obtain civil contempt relief for violation of an order, a movant must satisfy four elements:

(1) the existence of a valid decree of which alleged contemnor had actual or constructive knowledge;

(2) a showing that the decree was in the movant's "favor";

(3) a showing that the alleged contemnor, by its conduct, violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and

(4) a showing that the movant suffered harm as a result.

*See Colonial Williamsburg Foundation v. Kittinger Company,* 38 F.3d 133, 136 (4th Cir.1994) and cases cited therein. Each of these elements must be shown by clear and convincing evidence. *In re General Motors Corp.,* 61 F.3d 256, 258 (4th Cir.1995). Wil-

---

2. Mr. LaVerghetta testified that:
[We] didn't find out about the Order ... about Judge Davis' Order until Mr. Fischer FAXED it to me and, of course, we got into late winter ... a tough winter and part of that time was

trying to figure out how we could comply with it and yet not be an inconvenience to Columbia and not cause a tremendous amount of problems to Turf Valley in trying to move these things.

fulness, however, is not a necessary element of civil contempt. *Id.*

■ Based on the evidence presented at the hearing, the undersigned has concluded that Columbia has satisfied the four elements necessary for a finding of civil contempt. As to element 1, the October 31, 1995 Order of this Court is a valid decree which Turf Valley had actual knowledge no later than December 13, 1995, when it received the Order via facsimile from Columbia's counsel.

As to element 2, it is apparent on the face of the Order, that the decree was in the favor of the movant, Columbia, granting the relief requested in the lawsuit.

As to element 3, the evidence demonstrates that Turf Valley failed to comply with the October 31, 1995 Order, in that the structures identified in paragraph nine of that Order have remained in the rights of way up to and including the day of the hearing, April 26, 1996. The Order set forth "in specific detail an unequivocal command" which Turf Valley violated. *In re General Motors Corp.,* 61 F.3d at 258. Turf Valley conceded its non-compliance with the Order; this element is met.

While this failure alone satisfies the objective civil contempt standard in the Fourth Circuit of knowledge of the violation, Turf Valley would fare no better in a jurisdiction where non-compliance may be excused if the "party has ... diligently attempted in a reasonable manner to comply." *See Securities and Exchange Commission v. Oxford Capital Securities, Inc.,* 794 F.Supp. 104, 106 (S.D.N.Y.1992). Turf Valley's response to the Court Order and to opposing counsel's efforts of enforcement was nothing short of stonewalling. Turf Valley did not appeal the Order of October 31, 1995, or file a motion to reconsider, or seek a stay. Beyond a vague report of a telephone conversation about discussing compliance with the Order along with other matters in the future, Turf Valley made no request of Columbia to negotiate a modification of the Order or a delay of the deadline. Columbia, for its part, never in any way indicated any expectation other than that the October 31, 1995 Order would and should be fully complied with. Turf Valley, through its counsel, refused to recognize its obligation to comply with the Court Order or take action to be relieved of that obligation, either by appeal to the Court or to opposing counsel.

As to element 4, Columbia suffered harm as a result of the violation of the Court's Order as the encroaching structures impede the maintenance and routine safety checks of the pipelines and would interfere with and delay repair if any leakage or other problems should occur with the pipelines, perhaps with serious consequences. These structures impede Columbia's own compliance with the Natural Gas Pipeline Safety Act law and regulations, which law and regulations are aimed at insuring the safety of the gas line operations and the health of those in surrounding areas.

For the above reasons, the undersigned concludes that Columbia has proven that Turf Valley is in contempt of the October 31, 1995 Order and is entitled to relief and recommends that the Court find Turf Valley in contempt and order appropriate relief.

If the Court finds that the party is in contempt, it has wide discretion in fashioning a remedy. *In re General Motors Corp.,* 61 F.3d at 259. However, the remedy and sanction for civil contempt "must be remedial and compensatory," not punitive. *Id.* Moreover, Rule 70 of the Federal Rules of Civil Procedure specifically provides for a variety of remedial options in situations such as this:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the Court may direct the act to be done at the cost of the disobedient party by some other person appointed by the Court, and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The Court may also in proper cases adjudge the party in contempt.

Fed.R.Civ.P. 70.

■ Columbia requests the Court appoint "a Trustee for Turf Valley at Turf Valley's

expense to take all actions on behalf of Turf Valley necessary to comply with this Court's Order dated October 31, 1995." This remedy, specifically authorized in Federal Rule 70, is precisely suited to address the recalcitrance of Turf Valley. Accordingly, the undersigned further recommends that the Court order this relief. Columbia should provide the Court, and Turf Valley for comment, with the names of three potential trustees from among whom the Court may appoint.

## 2. Attorney's Fees

The discretion of the District Court in fashioning relief for civil contempt includes the right to order payment of attorney's fees as an element of civil contempt damages. See Folk v. Wallace Bus. Forms, Inc., 394 F.2d 240, 244 (4th Cir.1968). Recovery of attorney's fees as an element of civil contempt damages does, however, require more than a finding of contemnor knowledge of its violation of the terms of the decree. A contemnor's refusal to comply with a Court Order must rise at least to the level of "obstinence or recalcitrance" before attorney's fees can be ordered. Omega World Travel, Inc. v. Omega Travel, Inc., 710 F.Supp. 169 (E.D.Va.1989), aff'd., 905 F.2d 1530 (4th Cir. 1990). This requirement of obstinence or recalcitrance is based on the Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), decision in which the Supreme Court strongly reaffirmed the "American Rule" which disfavors awards of attorney's fees except in a limited number of exceptional circumstances, one of which is the "willful disobedience of a court order." Id. at 258, 95 S.Ct. at 1622. The evidence in this case suggests that non-compliance resulted from more than just "neglect and carelessness" as was the case in Omega World Travel, but resulted from a studied indifference to the Court and opposing counsel, rising to the level of obstinence or recalcitrance. Turf Valley attributes its non-compliance to its six week delay in receiving the Order and its belief that it might receive some clarification or accommodation on the removal of the structures. The Order, however, was clear. The structures must be removed from the defined rights of way.

There was nothing to clarify. If there was a way for Columbia to accommodate Turf Valley and not require the removal of some or all of the structures from the rights of way which would not violate federal law (and there appears to be none), Turf Valley showed no diligence in its efforts to pursue such an accommodation. Columbia's position throughout this litigation and after issuance of the Court's Order was that all the structures must be removed immediately from the rights of way. Even Turf Valley admitted that at least as of March 21, it recognized that Columbia would not stay its contempt proceedings while negotiating a meeting and yet Turf Valley made no telephone calls to Columbia from March 11 to April 26, the date of the hearing. It is not too strong to say that Turf Valley ignored the Order and Plaintiff's counsel's attempts to enforce it.

It is well-settled that district courts have considerable discretion in awarding attorney's fees, see Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), and an award by the district court will not be overturned unless it is clearly erroneous. See Spell v. McDaniel, 824 F.2d 1380, 1401 (4th Cir.1987), cert. denied, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). "In awarding attorney's fees, the district court should focus on the time and labor expended and the customary fees for like work." Colonial Williamsburg Foundation v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994). The 12 factors enunciated in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir.) cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) should be considered. After determining the initial fee, the district court should consider whether to adjust on the basis of other factors. Id.

In reviewing the hourly rates for the counsel involved in the case, $220.00 for Mr. Fischer, a lawyer and partner with 13 years of experience, concentrated in the area of utilities litigation, and $110.00 for Mr. Ingerman, with approximately two years of experience, it appears, based on the evidence presented, that the hourly rates charged were

reasonable and generally in line with the varying rates charged by similarly experienced and skilled attorneys in cases of this kind. *Id.* The number of hours expended on the motion and related efforts to enforce the judgment appear to be reasonable and justified under *Brubaker v. City of Richmond,* 943 F.2d 1363 (4th Cir.1991).

 It should be noted that Columbia presented expert testimony both as to the reasonableness of the hourly rate and the reasonableness of the hours expended on the matter. Turf Valley neither objected to the qualifications of Plaintiff's expert nor in any way questioned the necessity of the number of hours spent or the hourly rate charged in connection with the contempt proceedings. However, given that Columbia is entitled only to attorney's fees and costs for the contempt proceedings before the Court, the undersigned will recommend the disallowance of any attorney's fees for work prior to January 2, 1996, the date on which Columbia told Turf Valley it would begin preparing contempt proceedings (Plaintiff's Exhibit No. 6), and the date according to the timesheets, that it did. (*See* Plaintiff's Exhibit No. 5). This reduces the attorney's fees by $207.00. No other adjustment is warranted to the initial fee. Accordingly, having reviewed the attorney's fees under the twelve factors set out in *Johnson* and adopted in *Barber,* the undersigned concludes that the attorney's fees and costs, with the one modification set forth above, are reasonable. While no testimony was presented on the disbursements, the undersigned has reviewed the disbursements and finds them reasonable in light of the nature and extent of the matter.

Accordingly, the undersigned recommends to the Court that an award of attorney's fees and costs be made to compensate Columbia for its expenses in enforcing this Court's Order.

## CONCLUSION

In summary, it is recommended that the Court enter an Order:

1. Granting Columbia's Motion for Contempt and Adjudging Turf Valley to be in contempt of the Court's Order of October 31, 1995;

2. Appointing a trustee to accomplish the removal of all structures which encroach on Columbia's natural gas pipelines' rights of ways, in accordance with the Court's Order of October 31, 1995 and that Turf Valley bear the costs of such trustee and the costs of such removal; and

3. Awarding Columbia its reasonable attorney's fees in the amount of $5135.00 and costs in the amount of $236.84.