# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

Nos. 95-1068 and 99-1250

Hugh D. Cox, Appellant/Petitioner,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee/Respondent,

Samuel Mosley, Intervenor.

Before FARLEY, STEINBERG, and GREENE, *Judges.*

## O R D E R

In an earlier opinion, dated October 6, 2000, in this case, the Court reversed a June 22, 1999, decision of the Board of Veterans' Appeals; directed the Secretary to honor the 38 U.S.C. § 5904(d) fee agreement and pay the appellant the sum of $3,381.60, to which the Court found him to be entitled by law; and dismissed as moot the petitioner's petition for a writ of mandamus. *Cox v. Gober*, 14 Vet.App. 148, 154 (2000) [hereinafter *Cox v. Gober*]. On November 7, 2000, the Secretary filed a motion for reconsideration or, in the alternative, for a full-Court review.

The Secretary makes the following primary arguments: (1) The Court seemed to hold in *Cox v. Gober* that decisions of the Comptroller General are binding upon the Department of Veterans Affairs (VA), and any such holding violates the Constitutional separation of powers; (2) the decisions of the Comptroller General cited by the Court are inapposite to the instant case and should not be relied upon even as persuasive authority; and (3) the Court failed to address the Secretary's contention that sovereign immunity prevents VA from making any payment to the appellant in this case. Motion for Reconsideration (Mot.) at 2-11. On December 11, 2000, the Court stayed proceedings in this case pending the outcome of a motion for reconsideration, or, in the alternative, for a full-Court review, filed in *Snyder v. Gober*, 14 Vet.App. 154 (2000) [hereinafter *Snyder I*]. For the reasons set forth below, the Court will lift the stay in this matter and proceed to act on the motion for reconsideration. Concurrent with issuance of this order, the Court also issues an opinion (*Snyder v. Principi*, __ Vet.App. ___, Nos. 98-2219 and 99-1164 (November 14, 2001) [hereinafter *Snyder II*]) denying the Secretary's motion for reconsideration in *Snyder I*, *supra*.

The Secretary's three primary arguments in his motion for reconsideration of *Cox v. Gober* are identical to the first three arguments made in his motion for reconsideration in *Snyder I*. These arguments are fully addressed in parts II.A., B., and C. of the Court's opinion in *Snyder II*, and for the reasons set forth there, we find them equally unpersuasive here. Therefore, the Court will grant the Secretary's motion for reconsideration, and will reaffirm all parts of the October 6, 2000, opinion

in *Cox v. Gober*, with the exception of the part relating to the Secretary's first contention above, specifically part III. of *Cox v. Gober*, 14 Vet.App. at 152-53, which will be superceded by part I. of this order, although the result remains the same. *Cf. Douglas v. Derwinski*, 2 Vet.App. 435, 437 (1992) (en banc) (reaffirming panel opinion in *Douglas v. Derwinski*, 2 Vet.App. 103 (1992), except for one part). In addition, the Secretary makes one additional argument not addressed in *Snyder II*. The Court will address that point and reject it in part II. of this order.

## I. Replacement Analysis

The relevant background for this case is stated in full in *Cox v. Gober*, 14 Vet.App. at 149-151, and will not be repeated here. The Secretary concedes, and the Court agrees, that the fee agreement entered into by the appellant and the veteran that is the subject of this appeal meets the requirements of section 5904(d), thus entitling the appellant attorney to payment of 20% of the amount of past-due benefits awarded to the veteran. Record (R.) at 73 (VA's December 4, 1992, letter to the appellant stating that he was "entitled to a fee of 1/5 of past due benefits."); *cf. In the Matter of Fee Agreements of Smith, Cox, and Wick*, 4 Vet.App. 487, 499 (1993) (*In re Smith*) (holding that the Secretary was under no obligation to withhold and pay 20% of past-due benefits where the fee agreement did not meet the requirements of § 5904(d)). It is also undisputed that the entire award of past-due benefits was mistakenly paid by the Secretary directly to the veteran. *See* R. at 73. The Secretary argues, however, that VA, its error notwithstanding, has no legal authority to pay the appellant the 20% fee because all past-due benefits have already been paid to the veteran.

It is the Secretary's position that once all past-due benefits have been paid in a particular claim, there are no funds remaining from which VA has the legal authority to make a disbursement to the attorney. He argues that the appellant may be paid *only* out of the past-due benefits specifically designated for payment to the veteran. Because that fund has been depleted, the Secretary contends, in reliance on VA Gen. Coun. Prec. 27-92 (Dec. 9, 1992), that there is no remedy for the Court to apply. However, as set forth in *Snyder II*, __ Vet.App. at ___, slip op. at 12, and as is inherent in 38 U.S.C. § 5904(d)(2)(A)(i) and in 38 C.F.R. § 20.609(h) (2000), the Secretary is *obligated* to withhold and pay the agreed-upon fee directly to the attorney and that duty also creates a corresponding *right* for the attorney to collect that fee. *See In re Smith*, 4 Vet.App. at 495-96; *In the Matter of Fee Agreement of Smith*, 5 Vet.App. 307, 308 n.3 (1993) (en banc order denying en banc review) (Steinberg, J., dissenting). Thus, in the case of a 20% contingency fee agreement, the veteran and the attorney each have a separate entitlement; the veteran is entitled to 80% of a fixed amount (i.e., the past-due benefits awarded), and the attorney is entitled to 20% of that fixed amount.

The attorney's entitlement to his fee is no more "depleted" than would a veteran's right to VA benefits be depleted had VA erroneously paid his benefits to some other veteran. Surely, the second veteran would be the recipient of an overpayment, and unless and until VA recouped the money from the second veteran, VA funds for the payment of benefits would be diminished, but that in no way would eliminate VA's obligation to pay the first veteran the benefits to which he is entitled. Whether or not the Secretary decides to try to recoup the erroneous payment is an entirely different matter. *See* 38 U.S.C. § 5314 (authorizing the Secretary to recoup overpayments made to a benefits recipient by offsetting future payments).

The Secretary concedes in his supplemental memorandum that VA has authority to seek recoupment from the veteran of the money wrongfully paid to him, but argues that VA has the authority to pay the attorney only from the funds that it might happen to recover from the veteran. Supplemental Memorandum at 12-14. This argument is based upon VA Gen. Coun. Prec. 27-92, which concluded that "VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant." However, as we hold today in *Snyder II*, the fact of an erroneous payment to a veteran is immaterial to the Secretary's responsibility to make a payment to which there is lawful entitlement. *See Snyder II*, __ Vet.App. at __, slip op. at 9 (citing 2 Comp. Gen. 102, 106 (1922) (establishing that, where Veterans' Bureau made erroneous payment to person not entitled thereto and where another person is clearly entitled to that payment, it is "duty" of Director of Veterans' Bureau to "make payment to the rightful claimant . . . irrespective of recovery by the government of the amount erroneously paid . . . even though it involves the government in a double payment, provided, of course, there has been no contributing negligence or other fault chargeable to the person claiming the payment"); 66 Comp. Gen. 617, 619 (1987) (same, as to payment to Army construction contractor); 37 Comp. Gen. 131, 133 (1957) (same, as to payment of death gratuity under Servicemen's and Veterans' Survivor Benefits Act); 19 Comp. Gen. 104, 105 (1939) (same, as to Social Security Act payment)). The Gen. Coun. Prec. 27-92 is plainly in conflict with the holding in *Snyder II* and therefore cannot stand. *See Snyder II*, __ Vet.App. at __, slip op. at 9 ("Secretary's historic reliance on VA Gen. Coun. Prec. 27-92 . . . is plainly in conflict with our holding here and hence is invalid").

## II. Secretary's Additional Argument

The Secretary argues, in a section of his motion entitled "This Court Misinterpreted ***Controlling*** Precedent on Sovereign Immunity" (emphasis added), inter alia, that *Cox v. Gober*:

> [A]ttempt[ed] to distinguish two decisions of the United States Court of Appeals for the Eighth Circuit, *Pittman v. Sullivan*, 911 F.2d 42 (8th Cir. 1990)[,] and *Russell v. Sullivan*, 887 F.2d 170 (8th Cir. 1989). These cases relied on *Ruckelshaus*[ *v. Sierra Club*, 463 U.S. 680 (1983),] to support a conclusion that the United States is not liable for payment of attorney fees when such an award would have to be made from general agency funds as opposed to the past-due benefits from which it should have been paid.
>
> This Court distinguished *Russell* and *Pittman* stating that those cases were decided based upon the "finding that payment of attorney fees was committed by statute to the responsibility of the Secretary of Health and Human Services and was not subject to judicial review." *Cox* [*v. Gober*, 14 Vet.App. at 154]. That analysis is incorrect. It is true that both *Pittman* and *Russell* held that payment of attorney fees for work done at the administrative level was subject to the discretion of the Secretary of HHS and was not reviewable. However, inherent in the holdings of both cases is the view that attorney fees could be awarded *for work in court*. *Pittman*, 911 F.2d at 46; *Russell*, 887 F.2d at 171-72. . . .

Thus, while the Eighth Circuit in *Russell* did find that the district court lacked jurisdiction to decide the attorney-fee question in that case because the district court had no authority to review administrative-fee-payment decisions of the Secretary of HHS, it did not rely on *Ruckelshaus* for this proposition. Instead, the court went on to decide that, based upon *Ruckelshaus*, there was an additional basis for denying payment of attorney fees, stating:

> Finally, as the district court noted, even assuming it had jurisdiction in this case, there is no waiver of immunity that allows the Secretary to pay this fee. Since no funds are left for payment to Russell, ordering the Secretary to pay [the attorney's] award would require payment out of general social security funds. The United States is not liable for such a payment absent a specific waiver of sovereign immunity. *See Ruckelshaus v. Sierra Club*, [*supra*].

*Russell*, [887 F.2d] at 172.

Mot. at 7-9.

The Secretary also cites language from *Pittman*, 911 F.2d at 46, to the same effect. He then quotes further language from *Pittman*, *supra*, about the directive of the Social Security Administration's Programs Operating Manual System that provides that attorneys are to paid first in cases of mistaken release of funds and that recoupment efforts from the claimant are to commence thereafter. The Eighth Circuit rejected this concept (or, rather, stated in dictum that it would reject this concept if the case were not disposed of on other grounds) on the ground of a lack of waiver of sovereign immunity. *Ibid.* The Secretary states that this supports the notion that, even if the Court believes that 38 C.F.R. § 20.609(h) "creates a legal debt and therefore provides authority for VA to pay [the withheld funds] out of other funds", the Secretary may not do so because of the lack of a waiver of sovereign immunity. Mot. at 10. The Secretary concludes by stating that "[t]he absence of any discussion by the panel of the above authority provides yet another reason for reconsideration . . . of the panel's decision." Mot. at 11.

As to the Secretary's statement about "[t]he absence of *any* discussion by the panel of the above authority", a simple scan of *Cox v. Gober* will reveal considerable discussion of these cases. *See Cox v. Gober*, 14 Vet.App. at 153-54. Although the Secretary might not agree with our interpretation of these cases, we trust that, in the future, his counsel will be more prudent in characterizing the content of our opinions.

As to the merit of the Secretary's contention regarding these cases, the Secretary is, no doubt, aware that Eighth Circuit caselaw is not binding on this Court. The Secretary's attempts to place greater weight on this caselaw because, he claims, it interpreted Supreme Court precedent, are unpersuasive. Neither opinion cited *Ruckelshaus* for the proposition on which the Secretary relies, namely, that he is prevented from making any payment to the attorney because of a lack of a waiver

4

of sovereign immunity. Rather, both opinions cite *Ruckelshaus* for the **general** proposition that the United States is not liable for a payment absent a specific waiver of sovereign immunity. *See Pittman*, 911 F.2d at 46; *Russell*, 887 F.2d at 172. That theory is not in dispute. Even if the Eighth Circuit **had** interpreted *Ruckelshaus* in the manner described by the Secretary, it would not make those opinions binding on **this** Court.

Second, the Secretary's interpretation of this Eighth Circuit caselaw relies on his interpretation of sovereign immunity in the context of this case, i.e., that he has no authority to pay attorney fees out of **other funds**. However, as set out in part II.B.1.c. of *Snyder II*, __ Vet.App. at ___, slip op. at 7-10, this interpretation is incorrect. The Court is not ordering the Secretary to pay the attorney fee out of other funds but rather out of the withheld amount, which amount has remained **undisturbed** in the Secretary's compensation and pension account. The amount erroneously released did **not** come from the withheld past-due benefits, because such a release of funds would violate the Secretary's obligations to withhold this amount. As detailed in *Snyder II*, __ Vet.App. at ___, slip op. at 13, the full amount of the withheld past-due benefits is available to be paid, and the Secretary's sovereign-immunity arguments lack merit. Therefore, the Secretary's interpretation of this Eighth Circuit precedent is equally lacking in merit.

Finally, the Secretary's substantive arguments as to the Eighth Circuit caselaw are off base. The Secretary states that *Cox v. Gober* incorrectly interpreted the Eighth Circuit precedent, because "inherent in the holdings of both cases is the view that attorney fees could be awarded *for work in court*." Mot. at 8. However, neither *Pittman* nor *Sullivan* involved fees for work in court, *see Pittman*, 911 F.2d at 46; *Sullivan*, 887 F.2d at 171, and, therefore, any statement they might make on this point is dictum. In both cases, the fee at issue was for work done at the administrative level, and the Eighth Circuit noted in each case, as this Court accurately stated in *Cox v. Gober*, that "the payment of attorney fees was committed by statute to the responsibility of the Secretary of Health and Human Services and was not subject to judicial review." *Cox v. Gober*, 14 Vet.App. at 154. The Secretary's argument fails to take account of the fundamental difference between the situations described in *Pittman* and *Sullivan* and the situation in this case. As the Court explained in *Cox III*, both *Pittman* and *Sullivan* involved cases where the payment of attorney fees was a matter of discretion and was not subject to judicial review, whereas, in the instant situation, "38 C.F.R. § 20.609(h) leaves no such discretion to the Secretary in the payment of the attorney fees involved in the instant matter." *Cox v. Gober*, 14 Vet.App. at 154. Therefore, the Court rejects the Secretary's arguments regarding this Eighth Circuit caselaw.

Upon consideration of the foregoing, it is

ORDERED that the Secretary's motion for reconsideration is granted. All parts of the October 6, 2000, opinion are reaffirmed, with the exception of part III., 14 Vet.App. at 152-53, which is superceded by part I. of this order. In all respects, the result remains the same.

DATED:     November 14, 2001                    PER CURIAM.

5